FIFTH DIVISION

June 2, 2000

No. 1-98-4369

LYNDA GARDNER, )         Appeal from

)      the Circuit Court

Plaintiff-Appellant, )       of Cook County.

)

v. )

)    No. 98-L-1062

SENIOR LIVING SYSTEMS, INC., an )

Illinois Corporation; BRUCE C. PALLER; )

and BARRY GRUBER, )          Honorable

)    Jennifer Duncan-Brice,

Defendants-Appellees. )       Judge Presiding.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Lynda S. Gardner, brought this four-count complaint in the circuit court of Cook County to recover damages for injury to her reputation and business resulting from allegedly defamatory statements published by defendants, Senior Living Systems, Inc. (SLS), Bruce Paller, and Barry Gruber, in letters to their present and potential customers.  The circuit court granted defendants' motion to dismiss with prejudice pursuant to section 2-615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 1998)), on the basis that the publications were susceptible to an innocent construction and were otherwise not actionable.  For the following reasons, we reverse and remand for further proceedings.

Plaintiff was a former employee of SLS, a company that sells, services, and provides technical support for its line of computer software to the health-care industry.  Plaintiff had worked in the company's support department, providing computer services and training to SLS customers for about three years.  In September 1996, she resigned and went to work as an independent sales representative on a commission basis for Answers on Demand, a competitor of SLS.  

In count I of her complaint, plaintiff alleged that, shortly after her resignation, defendant Paller, her former support manager at SLS, authored and published a letter about her to SLS customers.  That letter is attached to plaintiff's complaint.  Therein, she directs attention to statements made by Paller that she claims falsely accused her of being "unethical" and taking actions that were "illegal."  She additionally alleged that the letter falsely accused her of "soliciting SLS clients and contracting her services" for SLS software training or custom work, falsely accused her of failing to remove SLS software from her computer, maliciously stated that she had "refused to sign a non-disclosure agreement" with SLS, and threatened SLS customers with "possible future problems" if they made use of her services.  As a result, she alleged that the letter impugned her integrity and prejudiced her in her business.  She sought compensatory and special damages, as well as punitive damages for the allegedly malicious acts.

Count II was directed at SLS for having approved or ratified the Paller letter and alleged liability under the doctrine of
 respondeat
 
superior
.  Count III was directed at defendant Gruber.  Plaintiff alleged that, two weeks after the Paller letter, Gruber, vice president of SLS, authored and published a separate letter to SLS customers and/or sales prospects, specifically addressing her.  That letter is also attached to plaintiff's complaint.  Therein, she directs attention to Gruber's postscript, which she claims falsely and maliciously accused her of "software piracy and industrial espionage related to theft of trade secrets," maliciously stated that "suit will be filed shortly" against her and threatened recipients of the letter that such lawsuit would likely affect any client that does business with her.  As a result, she alleged that the Gruber letter impugned her integrity and prejudiced her in her business.  She sought compensatory and special damages as well as punitive damages on account of the alleged malicious acts.  Lastly, count IV was directed at SLS for having approved or ratified the Gruber letter and alleged liability under the doctrine of 
respondeat superior
.

Defendants subsequently filed a motion to dismiss the complaint for failure to state a cause of action pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 1998)).  The trial court granted the motion with prejudice and denied plaintiff's motion for reconsideration.

On appeal, plaintiff contends that the trial court erred as a matter of law in finding that the complaint was legally insufficient.  Specifically, she argues that these statements fall into one of the recognized categories of words that are actionable 
per
 
se
 and are not capable of a reasonable innocent construction.  Defendants maintain that the dismissal of the complaint was proper because the language contained in the letters does not constitute libel 
per
 
se
, is subject to the Illinois innocent construction rule, and is absolutely privileged.

In considering whether the trial court properly dismissed the complaint, we note that a motion to dismiss under section 2-615 attacks the legal sufficiency of the complaint.  
Van Horne v. Muller
, 185 Ill. 2d 299, 305, 705 N.E.2d 898, 902 (1998).  The court must take all well-pleaded facts as true and draw all reasonable inferences from those facts that are favorable to the plaintiff.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86, 672 N.E.2d 1207, 1213 (1996).  Exhibits attached to the complaint are included as part of the complaint and must also be considered in that determination.  
Kirchner v. Greene
, 294 Ill. App. 3d 672, 677, 691 N.E.2d 107, 112 (1998).  A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover.  
Van Horne
, 185 Ill. 2d at 305, 705 N.E.2d at 902.  The standard of review governing dismissals pursuant to section 2-615 is 
de novo
.  
Kirchner
, 294 Ill. App. 3d at 679, 691 N.E.2d at 113.

With this standard in mind, we consider whether plaintiff's allegations state a cause of action for defamation 
per
 
se
.  A statement is defamatory if it impeaches a person's reputation and thereby lowers that person in the estimation of the community or deters third parties from dealing with that person.  
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992).  The question of whether a statement is actionable is a question of law, and each case must be decided on its own facts and circumstances.  
Newell v. Field Enterprises, Inc.
, 91 Ill. App. 3d 735, 741, 743, 415 N.E.2d 434, 441, 442 (1980).  However, certain words are considered libelous 
per
 
se
 because their publication is so obviously and naturally hurtful to the person aggrieved that proof of their injurious character is unnecessary.  
Mittelman v. Witous
, 135 Ill. 2d 220, 239, 552 N.E.2d 973, 982 (1989).  Accordingly, in such cases, the plaintiff need not plead or prove actual damage to reputation.  
Van Horne
, 185 Ill. 2d at 307, 705 N.E.2d at 903.  

Statements that fall into the category of defamatory 
per
 
se
 include those that (1) impute the commission of a criminal offense; (2) impute infection with a loathsome communicable disease; (3) impute inability to perform or lack of integrity in the discharge of duties of office or employment; (4) prejudice a party or impute lack of ability in her trade, profession or business; and (5) those that impute adultery or fornication.  
Van Horne
, 185 Ill. 2d at 307, 705 N.E.2d at 903.

Applying these categories to the present case, we first consider the Paller letter.  Plaintiff asserts that the statement falsely accusing her of "illegal" actions based upon her leaving with SLS software are actionable 
per
 
se
 because they impute the commission of the crime of theft and thereby prejudiced her in her business.  Despite defendants' assertion that the word "theft" does not appear in the statement, it is not necessary that the words state the commission of a crime in terms of art or with the particularity of an indictment for such words to be libelous.  
Catalano v. Pechous
, 83 Ill. 2d 146, 157, 419 N.E.2d 350, 355 (1980).  However, the crime must be an indictable one, involving moral turpitude and punishable by imprisonment or death.  
Adams v. Sussman & Hertzberg, Ltd.
, 292 Ill. App. 3d 30, 46, 684 N.E.2d 935, 947 (1997).

The crime of theft is punishable by imprisonment and is committed when a person knowingly obtains or exerts unauthorized control over property of the owner and intends to permanently deprive the owner of the use or benefit of the property.  720 ILCS 5/16-1(a)(1)(A) (West 1996).  Therefore, the statements by Paller to his customer, that plaintiff left with SLS software, that despite many requests never returned the computer to have the software removed, and that SLS believed these actions to be illegal, when taken in the light most favorable to the plaintiff, are sufficient to impute the commission of a theft.  Additionally, these statements would be sufficient to subject plaintiff to the criminal offense of unlawful use of recorded sounds or images.  720 ILCS 5/16-7 (West 1996).    

However, even if a statement is defamatory 
per
 
se
, it may not be regarded as defamatory if the statement is reasonably capable of an innocent construction.  
Bryson
, 174 Ill. 2d at 90, 672 N.E.2d at 1215.  To determine whether a statement is capable of an innocent construction, the court must consider it in context, giving the words and their implications their natural and obvious meaning.  
Bryson
, 174 Ill. 2d at 90, 672 N.E.2d at 1215.  Whether an innocent interpretation is reasonable is a question of law for the court to decide.  
Bryson
, 174 Ill. 2d at 90, 672 N.E.2d at 1215.

The statements made by Paller, taken in context of the letter, are as follows:

"It has recently come to our attention that one of our former support employees, Lynda Gardner, has in fact been soliciting SLS clients and contracting her services.  Lynda's actions are at a minimum unethical and because she left with [SLS] software, we believe illegal.

Lynda refused to sign a non-disclosure agreement stating personal policy and prior to her resigning last summer, had [SLS] software loaded on her personal laptop computer.  Despite many requests, she has never returned the computer to have the software removed.  She felt it unnecessary and stated 'It's a waste of time, if I really want the software I can copy it from a client's computer.'" 

The letter then warned customers that any work Gardner performed on their system could void their warranty and software agreement.

Defendants assert that the statements are reasonably susceptible to an innocent construction, namely, that plaintiff's conduct could be viewed, not as theft, but as a lack of rigor in following company procedure because she viewed it as a waste of time.  Furthermore, they argue that calling her actions "illegal" is susceptible to other interpretations, including civil liability, citing 
Main v. Baker
, 176 Ill. App. 3d 255, 258-59, 530 N.E.2d 715, 717 (1988).  

Standing alone, the word "illegal" may be innocently construed because it does not necessarily connote the commission of a criminal offense.  However, here, considering the statements, and giving the words and implications their natural and obvious meaning, it is evident that the statements taken together were intended to accuse plaintiff of unauthorized control of the software, not a lack of rigor in following company procedure.  While the innocent construction rule does not allow for the balancing of reasonable constructions, we need not construe the words in their best possible sense where the defamatory meaning is far more reasonable, nor do we need to "espouse a naïveté unwarranted under the circumstances."  
Bryson
, 174 Ill. 2d at 94, 672 N.E.2d at 1217. 

Additionally, the implication of the letter went beyond a mere warning about customer warranties; it warned that customers should not do business with plaintiff because she stole defendants' software and was using it illegally to compete for SLS customers.  While it is for the jury to determine the truth or falsity of the statements (
Bryson
, 174 Ill. 2d at 100, 672 N.E.2d at 1220), taking the allegations in the light most favorable to the plaintiff, the effect of the letter was to attribute criminal activity to her and to prejudice her in her ability to do business within the same marketplace.  Thus, plaintiff has pleaded sufficient facts to support a cause of action for defamation 
per
 
se
 against Paller and SLS, and the trial court erred in dismissing counts I and II of the complaint.   

Plaintiff next asserts that the statements falsely accusing her of being "unethical" based on her solicitation of SLS customers and refusal to sign a nondisclosure agreement are actionable 
per
 
se
 because they imputed a lack of integrity in her employment and prejudiced her in her post SLS business.  

We find that these statements are not reasonably capable of the defamatory meaning ascribed to them.
  Merely calling plaintiff "unethical" here cannot not be reasonably interpreted as stating actual verifiable facts and therefore falls under a constitutionally protected opinion.  
Bryson
, 174 Ill. 2d at 100, 672 N.E.2d at 1220. Even taken in context with the other statements, accusing plaintiff of soliciting SLS customers has no bearing on her competence while she was employed at SLS, and nothing in the Paller letter suggests that plaintiff was bound by any agreement to refrain from such competition after she left SLS.  Additionally, her refusal to sign a non-

disclosure agreement was a personal choice as stated by Paller.  Accordingly, these statements could not be deemed to have imputed a lack of integrity in her employment or prejudiced her post SLS business. 

We next address the allegations with respect to the Gruber letter.  The body of the letter purports to encourage potential customers to purchase SLS software and to show that its software is superior to that of its competitors.  The alleged defamatory language is found in the postscript wherein Gruber states, 

"A law suit will be filed shortly against Lynda Gardner and Answers on Demand alleging software piracy and industrial espionage related to theft of trade secrets.  This will likely affect any client that does business with them."

Plaintiff contends that the postscript is defamatory 
per
 
se
 because it imputed the commission of a crime and prejudiced her in her business.  Defendants maintain that the statement was merely one of intent to file a civil lawsuit, is devoid of specific factual context, does not positively identify plaintiff as having committed a criminal offense, and is absolutely privileged as a communication made preliminary to contemplated litigation.

While merely expressing an intent to file a lawsuit is not necessarily defamatory 
per
 
se
, the Gruber postscript extends beyond a mere generalized intent by directly naming the plaintiff and accusing her of specific offenses, namely "software piracy," and "industrial espionage related to theft of trade secrets."  Piracy is, "in essence, the theft of software royalties from those who are entitled to them.  Theft is a crime in Illinois.  720 ILCS 5/16-1 (1996)."  
Langford v. County of Cook
, 965 F. Supp. 1091, 1101 (N.D. Ill. 1997).  Theft of trade secrets is a federal offense for which a person may be imprisoned for up to 10 years.  18 U.S.C.A. §1832 (West Supp. 1997).  Accordingly, these statements impute the commission of a criminal offense.
  Additionally, telling potential clients that plaintiff is a spy, has stolen trade secrets, and is a software pirate, and threatening customers that they may be affected if they use her services, are all factually verifiable statements that directly attack plaintiff's ability to compete for customers in the marketplace, thereby prejudicing her in her profession.  Therefore, these statements, taken in the light most favorable to the plaintiff, are defamatory 
per
 
se
.      

Defendant argues that the mere fact that plaintiff is to be named as a party to the lawsuit does not necessarily incriminate her for all of the wrongdoing alleged in the letter, citing 
Harte v. Chicago Council of Lawyers
, 220 Ill. App. 3d 255, 261-62, 581 N.E.2d 275, 279 (1991), in support.  In 
Harte
, the court found that the statement that an attorney was "implicated" in Operation Greylord could reasonably be interpreted to mean that the attorney was only involved in the proceedings and not incriminated by them.  However, unlike 
Harte
, here the postscript does not make a vague generalized statement of implication in a crime but, rather, specifically accuses plaintiff of the commission of several specified offenses.  

Nor do we find the postscript analogous to 
Adams
, 292 Ill. App. 3d at 47, 684 N.E.2d at 947.  There, the court held that a statement merely indicating that someone has been arrested for an offense and the statement that the plaintiff had "'past offenses in other places along with cars, something to do with car theft'" did not impute the commission of a crime.  292 Ill. App. 3d at 47, 684 N.E.2d at 947.  The statements only related to vague past unspecified offenses and did not definitively refer to the commission of an offense.  Here, the postscript contains an unambiguous statement referring explicitly to criminal conduct attributable to plaintiff.

We are not persuaded that there is a reasonably innocent construction for these statements that would remove them from the actionable 
per
 
se
 category.  If SLS's intention was merely, as it states, to encourage clients to choose its software over that of its competitor by showing that its software and support capabilities were superior, there would be no need to add the postscript.  The only reasonable construction of the postscript when taken in context, and in the light most favorable to the plaintiff, is that SLS's motivation for adding it was to prejudice plaintiff in her ability to compete for customers essential to her business.

Defendants next maintain that the allegedly defamatory statements contained in the Gruber letter are protected by an absolute privilege because the subject matter of the postscript was related to a contemplated judicial proceeding.  In support of their assertion, they rely on the Restatement (Second) of Torts §587 (1977).  This section provides:

"A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."  Restatement (Second) of Torts §587, at 248 (1977).

While section 587 has been adopted in Illinois (see, 
e.g.
, 
Defend v. Lascelles
, 149 Ill. App. 3d 630, 634-35, 500 N.E.2d 712, 715 (1986)), it has never been applied in the context of a defamatory statement made preliminary to contemplated litigation and made to a private nonjudicial or non-quasi-judicial third party.  

We have previously held that, since the absolute privilege affords a complete defense to defamation, it is generally limited to discrete situations which involve legislative, judicial, or quasi-

judicial proceedings.  
Barakat v. Matz
, 271 Ill. App. 3d 662, 668, 648 N.E.2d 1033, 1039 (1995).  The defense of privilege or immunity in defamation cases is steeped in public policy.  It rests upon the idea that "conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance," an interest to be protected "even at the expense of uncompensated harm to the plaintiff's reputation."  W. Prosser, Torts §114, at 776 (4th ed. 1971).  Thus, the privilege is not a license that protects every libelous statement made preliminary to contemplated litigation. 

For example, in 
Thomas v. Petrulis
, 125 Ill. App. 3d 415, 423, 465 N.E.2d 1059, 1064 (1984), we held that, because of the recognized public policy interest in encouraging communication with the Equal Employment Opportunity Commission (EEOC), defamatory statements contained in a properly filed EEOC charge were protected by an absolute privilege.  However, those statements would lose their privilege when published to persons beyond those who would necessarily require the communication. 

Based upon the allegations, such special immunity is unwarranted in the present case.  The Gruber letter neither advances an interest of social importance nor is a communication made to those who would necessarily require it.  Rather, the letter was sent to a potential sales prospect who had no relation to the proposed lawsuit against plaintiff.  No social or public policy goal would be advanced by cloaking it in immunity.  Accordingly, we find that the alleged defamatory statements are not entitled to an absolute privilege and, therefore, the trial court erred in dismissing counts III and IV of plaintiff's complaint.

Accordingly, the judgment of the circuit court is reversed and remanded for further proceedings.  

Reversed and remanded. 

HARTMAN and QUINN, JJ., concur.