**Alan V. WASHBURN, Plaintiff,**

v.

**Michael LAVOIE, et al., Defendants.**

**No. 03–0869 (RJL).**

United States District Court, District of Columbia.

Aug. 30, 2004.

Alan V. Washburn, Washington, DC, pro
se.

Peter J. Kadzik, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for Defendants.

## ORDER

LEON, District Judge.

Alan V. Washburn ("Plaintiff"), a 69–year old attorney proceeding *pro se*, seeks damages from Michael Lavoie, Christian Wood, Robert Bercik, and Edmund Donnelly ("Defendants"), on claims of defamation and false light publicity. The claims arise from statements and a letter written by defendants voicing concerns that plaintiff violated both their privacy rights and 18 U.S.C. § 2511(2)(d) of the Federal Wiretap Act. Several motions are currently before the Court in this matter, including cross-motions for summary judgment, additional discovery, and motions to strike various affidavits and pleadings. After reviewing the record and the parties briefs, the Court GRANTS defendants' motion for summary judgment, and, for the following reasons, DENIES all other motions.[1] Simply stated, this is a matter that does not belong in this Court.

## BACKGROUND

The plaintiff's claims against the defendants are the culmination of a lengthy and vitriolic neighborhood dispute between the two parties in the Georgetown area of Washington, D.C. The plaintiff is a resident of 3427 O Street ("3427 O"). The defendants resided at the adjacent 3425 O Street ("3425 O") during the relevant time period beginning in August 2001 while attending Georgetown University.

A series of disputes between the two neighbors began just a few weeks after the defendants moved into 3425 O. The plaintiff addressed numerous letters complaining of the defendants' behavior to the defendants, Nancy Itteilag ("Ms. Itteilag"), the defendants' landlord, and Julianne Fultz ("Ms. Fultz"), Georgetown University's Coordinator of Off–Campus Student Life. In his letters, the plaintiff complained of alleged aspects of the defendants' behavior such as excessive noise, improper disposal of household trash, and abusive language aimed at the plaintiff.

On or about March 1, 2002, the plaintiff wrote a letter to Ms. Fultz complaining of excessive noise emanating from the residence of the defendants. Included in this letter was a statement alleging that plaintiff, while recording the date and time of a loud noise made by the defendants into a dictation recording device, had captured yet another noise disruption on the tape. The plaintiff offered to produce the tape to Ms. Fultz at her request as evidence of the disruptions.

The defendants responded to this letter by consulting with Ms. Fultz and sending the plaintiff a letter requesting a personal meeting. The plaintiff did not respond to this letter. On April 16, 2002, the plaintiff addressed another letter to the defendants, Ms. Fultz, and Ms. Itteilag, complaining of excessive noise. In this letter the plaintiff informed the defendants that his dictation recorder had picked up a burst of noise from their apartment. The plaintiff threatened litigation for nuisance if the disruptions did not cease.

In response to the April 16 letter, the defendants sent a letter to Ms. Fultz with copies to the plaintiff and Ms. Itteillag,

---

**1.** Also pending are defendants' Motion to Strike Plaintiff's Motion for Summary Judgment and the Affidavit of Lee Garling, defendants' Motion for Additional Discovery, Plaintiff's Motion to Strike Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Motion to Strike Plaintiff's Reply to Defendants' Opposition to Plaintiff's Summary Judgment Motion. All four of these motions are DENIED.

presenting their side of the story and seeking assistance from the University to resolve the situation. The letter included a section in which the defendants expressed concerns that the plaintiff's recording of noise emanating from their apartment was an infringement on their privacy rights, specifically a violation of 18 U.S.C. § 2511(2)(d), a subsection of the criminal wiretapping statute that carves out an exception under the wiretapping statute for persons intercepting wire, oral or electronic communications if such person is party to the communication or has been given prior consent.[2] The text of the statute was also attached to the letter.

Upon receiving the letter, the plaintiff sent another letter to the defendants in which he argued that his recording of noises from 3425 O was completely lawful. The plaintiff demanded that the defendants retract their statement and apologize, threatening litigation for defamation in the event of noncompliance. The defendants failed to respond to this letter.

Thereafter, the plaintiff filed suit for defamation and false light publicity.[3]

## ANALYSIS

■■■ In their motion for summary judgment, the defendants' petition the Court to find that their statements were made in self-defense, and thus were protected by a qualified privilege constituting a complete defense to a claim of defamation. However, summary judgment on this basis fails because a genuine issue of material fact exists as to the publication element of the qualified privilege.[4] This failure notwithstanding, the Court finds that summary judgment for the defendants is appropriate on grounds that the defendants' statements were not defamatory.[5]

Summary judgment should be granted if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "District courts are widely acknowledged

---

**2.** Apparently, the defendants construed subsection (2)(d) as criminalizing the taping of a conversation without consent. However, subsection (2)(d) does not criminalize this behavior, but rather details the different exceptions to the general crime of wiretapping. The defendants did not cite that section, and it is apparent that the defendants did not understand the meaning of this language.

**3.** Plaintiff also filed a nuisance claim against defendants in the Civil Division of the District of Columbia Superior Court.

**4.** The common interest privilege applies to an alleged defamatory statement when the statement is (1) made in good faith, (2) on a subject in which the communicating party has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, and (3) to a person with a corresponding interest. Moss v. Stockard, 580 A.2d 1011, 1024 (D.C. 1990). Implicit in this definition is that excessive publication, defined as publication to those with no common interest in the infor-

mation communicated, or publication not reasonably calculated to protect or further the interest, will render a statement non-privileged. Novecon v. Bulgarian–American Enter. Fund, 190 F.3d 556, 566 n. 5 (D.C.Cir.1999). Here, a genuine issue of material fact exists as to whether there was excessive publication of defendants' statements, in particular to defendants' neighbor Lee Garling.

**5.** In a suit for defamation, the plaintiff must establish: (1) defendant made a false and defamatory statement concerning the plaintiff; (2) defendant published the statement without privilege to a third party; (3) defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. Klayman v. Segal, 783 A.2d 607, 613 n. 4 (D.C.2001); Grossman v. Goemans, 631 F.Supp. 972 (D.D.C.1986).

to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [he] had to come forward with all [his] evidence." *Id.* at 326, 106 S.Ct. 2548; *See also Athridge v. Rivas*, 141 F.3d 357, 362 (D.C.Cir.1998). However, a basic requirement of summary judgment is that "[a] party must be given notice ... so that the evidence necessary to oppose the motion may be marshaled and presented to the Court." *Gibson v. Mayor of Wilmington*, 355 F.3d 215, 223 (3d Cir.2004). The losing party is considered to have "notice" when there is "reason to believe the court might reach the issue," and that party has "received a fair opportunity to put its best foot forward." *Id.; Leyva v. On the Beach, Inc.*, 171 F.3d 717, 720 (1st Cir.1999).

■■■ The plaintiff argues in his summary judgment motion that the defendants' statements were libelous *per se* because they impute to him criminal activity. Pl.'s Mem. of P. & A. 13–16. Acting as an exception to the general rule that libel is not actionable unless actual damages are demonstrated, the District of Columbia recognizes charges of criminal conduct as libelous *per se*. *Grossman*, 631 F.Supp. at 973. However, this exception has traditionally been restricted by courts to crimes with severe consequences, such as crimes leading to social ostracism, or even, as in past English courts, crimes punishable by corporal punishment. Dan B. Dobbs et al., *Prosser and Keeton on Torts* 788–89 (1984). Such exceptions are grounded in the belief that "[c]ertain words are considered libelous *per se* because their publication is so obviously and naturally hurtful to the person aggrieved that proof of their injurious character is unnecessary."

*Gardner v. Senior Living Systems, Inc.*, 314 Ill.App.3d 114, 246 Ill.Dec. 822, 731 N.E.2d 350, (2000). Thus, in this case, a consideration of "whether, from the language attributed to the defendant, there is something from which the commission of a crime involving moral turpitude can be inferred" is appropriate. *Farnum v. Colbert*, 293 A.2d 279, 281 (D.C.1972). Regrettably for the plaintiff, no such inference can be inferred in this case.

The plaintiff's argument for *per se* defamation fails because the defendants' words do not impute to him the commission of a criminal offense involving moral turpitude.[6] The plaintiff primarily relies on two communications made by the defendants: (1) the April 16 letter in which the defendants expressed their concerns to Ms. Fultz that the plaintiff had violated their privacy rights and, specifically, 18 U.S.C. § 2511(2)(d); and (2) the defendants' alleged statements to neighbor Lee Garling that plaintiff had "illegally" taped them. Pl.'s Mem. of P. & A. 5–6, 8–9. The plaintiff's argument for *per se* liability rests on the basis that the defendants, through their letter and remarks, have imputed to him a crime of moral turpitude. However, the Court is unconvinced that the accusations made by the defendants, in any way, imply that he may have committed a crime of that nature. The defendants merely expressed what they believed to be true: that plaintiff, for whatever reason, had recorded noise emanating from their house, and that such tapings were a violation of 18 U.S.C. § 2511(2)(d). Under the circumstances of this case, such an accusation can hardly be considered one imputing the commission of a crime of shameful wickedness or depravity (i.e. a

---

**6.** Turpitude is an "inherent baseness or vileness of principle, words, or actions; shameful wickedness; depravity." *Webster's Third New International Dictionary* 2469 (3d ed.1981); *see also Hughey v. Bradrick*, 39 Ohio App. 486,

177 N.E. 911, 912 (1931). Crimes purporting to fall within this exception should involve a "major social disgrace." Dobbs, *supra* at 789.

crime of moral turpitude). Accordingly, the Court finds that the defendants' statements were not libelous *per se.* Could the statements be defamatory nonetheless?

 A statement is defamatory "if it tends to injure the plaintiff in his trade, profession, or community standing." *Moss,* 580 A.2d at 1011. Such statement "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Klayman,* 783 A.2d at 613. "[C]ourts are charged with the responsibility of determining whether a challenged statement is capable of conveying a defamatory meaning." *White v. Fraternal Order of Police,* 909 F.2d 512, 518 (D.C.Cir.1990). The power of the Court in this area is limited to the extent that it may only rule as a matter of law when "the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." *Id.* In making this determination, a publication should be "considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Klayman,* 783 A.2d at 613.

 Viewed within context, the Court finds that, as a matter of law, the defendants' statements were not capable of a defamatory meaning. In arriving at this conclusion, the Court is conscious of the fact that at the time of their publication, the two parties had been involved in what amounts to a nearly nine-month running dispute. The plaintiff details numerous alleged incidents in his pleadings showing that, at the very least, some hostilities existed between the parties. Moreover, the defendants' statements were a reaction to threats of litigation, arising out of these incidents, made by the plaintiff, a lawyer, against the defendants, a group of college students.

While the Court certainly does not condone the defendants' reactions to this threat through their subsequent statements, it does find that no reasonable person in the position of the addressees would have viewed these statements as defamatory. First, construing the defendants' April 16 letter "in the sense in which it would be understood by the readers to whom it was addressed," that is, as Ms. Fultz or Ms. Itteilag would have viewed it, the Court finds that any reasonable person in such circumstances would have viewed the defendants' accusations to be what they were: statements by highly frustrated students who are cleverly, but not expertly, reacting to an attorney's threat of litigation. Surely the accuracy of any legal characterization made by mere undergraduate students would have been summarily questioned, discredited, or both by any reasonable listener regardless of their familiarity with the ongoing dispute. Such statements could not be reasonably viewed as injurious to the plaintiff "in his trade, profession, or community standing." *Moss,* 580 A.2d at 1011. Nor could it reasonably cause him to appear "odious, infamous, or ridiculous." *Klayman,* 783 A.2d at 613. There is nothing in the language of this letter that would hold the plaintiff in disgrace or dishonor, or make him the subject of ridicule especially to a school official who was well aware of the running dispute between the parties.. Accordingly, the Court finds that the defendants' April 16 letter was not capable of a defamatory meaning.

 Similarly, the Court finds that no reasonable person in the place of Garling would have understood defendants' alleged statements portraying plaintiff as having "illegally" taped them to be defamatory. As the defendants' neighbor, Garling was aware that the defendants were undergraduate students at Georgetown University, and neither practitioners nor students

of law.[7] Garling most assuredly was also aware of the rancor that existed between the two parties. Based upon this, a reasonable person in Garling's position would have dismissed defendants' comments regarding plaintiff as baseless and merely borne of frustration. Assertions that Garling understood these comments in a manner injuring plaintiff's community standing strains logic beyond the bounds of reason. As such, the Court also finds that defendants' alleged comments to Garling claiming that plaintiff had "illegally" taped them were not defamatory.

Since the defendants' statements cannot reasonably be construed to be defamatory, the Court finds that the plaintiff cannot establish the first element of a claim for defamation. Accordingly, the Court GRANTS summary judgment for the defendants.

 Finally, the plaintiff also seeks relief under a claim of false light publicity. Claims of false light publicity require the plaintiff to show: (1) publicity; (2) about a false statement, representation, or imputation; (3) understood to be out of and concerning plaintiff; and (4) which places plaintiff in a false light that would be highly offensive to a reasonable person. *Klayman,* 783 A.2d at 613–14. For similar reasons, the Court GRANTS the defendants' motion for summary judgment as to this claim as well. The fourth element requires that the defendants' statements must have portrayed the plaintiff in a manner that would be "highly offensive to a reasonable person." *Id.* The plaintiff will not be able to show this. As previously noted, a reasonable person would have to consider the defendants' statements in the context within which they were made. *Id.* at 614. Since this Court has already determined that the defendants' statements,

considered as a whole, did not make the plaintiff appear "odious, infamous, or ridiculous," it must similarly conclude that the statements did not place the plaintiff in "a highly offensive light." Accordingly, the Court GRANTS summary judgment for the defendants on the claim of false light publicity.

### ORDER

For the foregoing reasons, it is this 30th day of August hereby

**ORDERED** that the defendants' Motion for Summary Judgment [# 39] is **GRANTED**; and it is further

**ORDERED** that the plaintiff's Motion for Summary Judgment [# 40] is **DENIED**; and it is further

**ORDERED** all other pending motions [# 41, 42, 49, 55] are **DENIED**.

**SO ORDERED.**

---

7. It should be noted that Georgetown's law school is not located in the Georgetown section of Washington, D.C., but a considerable distance away in the Capitol Hill section of the city.