2026 IL App (1st) 250612-U

FOURTH DIVISION
Order filed: March 19, 2026

No. 1-25-0612

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PETER O'SULLIVAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 L 3203 |
| | ) | |
| ANTHONY MARTIN, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Some of plaintiff's allegations that defendant published false statements accusing plaintiff of knowingly making a false statement to win an election were sufficient to state a cause of action for defamation *per se*. Plaintiff's claim for defamation *per quod* based on the same allegations was duplicative and therefore properly dismissed, and plaintiff failed to demonstrate that the circuit court erred in dismissing his claim for false light invasion of privacy when his brief contained only a conclusory, one-sentence argument on the issue.

¶ 2    This appeal concerns plaintiff Peter O'Sullivan's defamation action against defendant

Anthony Martin, who was O'Sullivan's opponent in a race for office in the Chicago Fire Fighters

Union, Local 2 ("Local 2"). In the leadup to the election, O'Sullivan published a campaign flyer in which he made a statement asserting that money went missing from the union's pension fund while Martin was serving as Trustee of the fund and criticizing Martin's handling of the matter. In a series of responsive Facebook posts, Martin denied O'Sullivan's allegation that funds went missing and responded that O'Sullivan was deliberately making false allegations against him to win the election. O'Sullivan subsequently initiated this action, raising claims of defamation *per se*, defamation *per quod*, and false light invasion of privacy. Over the course of several motions to dismiss, the circuit court dismissed all three claims with prejudice under section 2-615 of the Illinois Code of Civil Procedure ("Code") (735 ILCS 5/2-615 (West 2024)). O'Sullivan now appeals those dismissals. For the following reasons, we reverse the court's dismissal of part of the claim of defamation *per se*, affirm the court's dismissals of the claims of defamation *per quod* and false light invasion of privacy, and remand for further proceedings.

¶ 3    Because this appeal concerns the dismissal of a complaint under section 2-615, we take our factual history from the allegations presented in O'Sullivan's initial and amended complaints. O'Sullivan is a retired member of the Chicago Fire Department ("CFD"), and Martin is a current member of the CFD. Both are active members of Local 2. In early 2023, O'Sullivan and Martin were both running in Local 2's election for the position of Secretary-Treasurer. After an initial vote failed to produce a winner, a run-off election was to be held. Shortly before that run-off, O'Sullivan published a campaign flyer asserting that money was missing from Local 2's pension fund, the Fireman's Annuity and Benefit Fund ("FABF"), while Martin served as Trustee and Secretary:

> "I can assure you as Secretary Treasurer of Local 2 there won't be any replication
> of what occurred at the Fireman's Annuity and Benefit Fund where thousands of

dollars in charitable donations designated for the Widow's and Orphans Fund along with cash went missing and unaccounted for never to be found. At no time was there ever an explanation presented to the participants by the Secretary of the Pension Fund who oversaw the office on a full-time basis when the monies went missing."

¶ 4    On March 31, 2023, a Facebook user named Mitchell Crooker posted a picture of the campaign flyer on a Facebook page with over 1,200 followers, a majority of whom were members of Local 2. That same day, Martin posted a response on the Facebook page:

"Peter [O'Sullivan] knows this is BS, but spread a false statement on the eve of the election to win. [Tim] McPhillips even apologized after being taken to task because there was NO EVIDENCE of anything. Where's the beef. Show your work Mitch [Mitchell Crooker] and Pete. I was totally exonerated and vindicated. There were accusations without proof. Tim was put on charges and can no longer run for anything. Pete doesn't care about the truth as long as he gets elected. It is sad that Mitch doesn't care about the truth either and he put his support behind this BS!"

¶ 5    Crooker then posted a response to Martin's post:

"Anthony....YES OR NO is there money missing from the widows and orphans fund to the tune of 21-28 K that is KNOWN. From ALL accounts YOU were the full time secretary of that said fund and made NO formal investigation of money set aside for some very unfortunate people. I did NOT say YOU took it. Pete did NOT say you took it. What he mentioned was you were in charge of the fund at the time and it was water under the bridge. So I DID my work I pointed out money was missing and it was NOT investigated."

¶ 6    Martin responded again with two additional posts:

"Answer: NO! Not one penny is missing from the widows and orphans Fund. I sued after that malicious statement was communicated to the field and won. I recieved [*sic*] an apology which most of the department is aware. I filed union charges against the former trustee and won that on every level including appeals. That trustee is forbidden from ever holding an elected position in our union again. I know this is how Pete Operates. I overcame all the misinformation they concocted and won. The only thing ever discovered is that the Fund had faded receipts over an eight year period. There is no money missing from the widows and orphans and the only thing discovered is that some eight year old receipts were faded after being examined eight years later for the pension funds petty cash. There is NO evidence of ANY money ever being stolen. A faded record doesn't make anyone a thief and

YOU know me better that [*sic*] that after the millions of dollars that I have raised over the years. My records and audits are perfect and our auditors have always given us a clean bill of health. Be better than this Mitch! I fought hard to clear the BS up but it is election time and this is how some people operate. Just remember Tom B and Mike Cahill. Good men both maligned by this guy."

The second post then added:

"No money is missing and none was stolen. Every penny of the widows and orphans has been accounted for. Everyone on both the Pension Fund and Widows and Orphans Fund takes their fiduciary responsibility seriously. FOIA the audits and they are ALL clean."

¶ 7    Tim McPhillips, who was referenced in Martin's first post, then posted his own response:

"Tony Martin don't drag me into this nonsense you created. I never called you and apologized; on the advice of my attorney I signed a letter stating you never stole any money. I was sick of the attorneys bickering between words like stealing and misallocating, typical lawyering nonsense. I wanted to move on, but you just keep it up with your groundless lawsuits, calling the police, filing a report to have my CPA license reviewed and filing an unsubstantiated order of protection. I come on this job hoping to follow in the footsteps of some great honorable men and instead I get a Local 2 member calling the police on me at a union meeting because you staged an altercation. I'm embarrassed for you."

That post prompted Martin to respond:

"Tim, I didn't drag you back into this, Peter did with resurrecting statements which have been disproven. Additionally, I considered the signed apology an apology which is why we are where we are today."

¶ 8    Thereafter, O'Sullivan initiated the present case against Martin alleging claims of defamation *per se* and false light invasion of privacy. In support of those claims, O'Sullivan alleged in paragraph 32, on information and belief, that the following statements from Martin's Facebook posts were false:

"(a) no funds are missing or unaccounted-for at the FABF or EMWQ [Widows and Orphans] Fund;

(b) Plaintiff's statement regarding missing funds was 'BS;'

(c) Plaintiff O'Sullivan knew his statement about missing funds was 'BS' but spread the false statement anyway to win the election;

(d) Plaintiff does not care about the truth as long as he gets elected;

(e) there was no evidence of anything;

(f) Plaintiff resurrected statements regarding missing funds that had been disproven;

(g) no money is missing and none was stolen from the FABF or EMWQ Fund;

(h) every penny of the EMWQ Fund had been accounted for;

(i) 'there is NO evidence of ANY money ever being stolen;'

(j) '[t]here is no money missing from the widows and orphans and the only thing discovered is that some eight year old receipts were faded after being examined eight years later for the pension funds petty cash;'

(k) the only thing discovered in the petty cash review were faded receipts;

(1) not one penny is missing from the EMWQ Fund and Defendant sued based on that malicious statement and won; and

(m) Plaintiff 'concocted' 'misinformation.'"

O'Sullivan alleged that these false statements were defamatory *per se* because they imputed a want of integrity to him in the discharge of the duties he would assume as Secretary-Treasurer of Local 2 if he were to win the election. In Count II, he alleged that Martin's false statements "placed Plaintiff in a false light that would be highly offensive to any reasonable person" and that Martin made them with actual malice. He sought "[p]resumed actual damages," other compensatory damages, and punitive damages.

¶ 9 Upon Martin's motion, the circuit court dismissed both claims under section 2-615 with leave to replead a defamation *per quod* claim only. The court denied Martin's request for dismissal under section 2-619. Regarding the claim for defamation *per se*, the court noted that O'Sullivan was required to show that the statements at issue imputed that he lacked integrity in performing the duties of the office for which he was running. The court also found that the statements, individually and collectively, did not satisfy that requirement. The court found that O'Sullivan's claim of false light invasion of privacy failed for the same reason and that a reasonable person would not be highly offended by Martin's statements because the parties "were disagreeing about what the truth was" in Facebook posts. However, the court allowed O'Sullivan to file an amended complaint to allege a claim for defamation *per quod*.

¶ 10 O'Sullivan's first amended complaint re-alleged the claims for defamation *per se* and false light invasion of privacy as counts one and three, respectively, to preserve those issues for appeal, and added a claim for defamation *per quod* as count two, which was based on exactly the same statements as the other two counts. Martin moved to dismiss the first amended complaint. The court granted the motion without prejudice, finding that O'Sullivan's defamation *per quod* claim failed to sufficiently allege special damages.

¶ 11 O'Sullivan filed a second amended complaint alleging the same three claims. The claim for defamation *per quod* remained virtually identical to the claim for defamation *per se* and was premised on the same Facebook comments. It added only that Martin's allegedly defamatory Facebook comments "were part of a broader campaign to impugn [O'Sullivan's] reputation," which included "false allegations that [O'Sullivan] stole a Local 2 member list to circulate his campaign newsletter." O'Sullivan also alleged that he suffered special damages in the form of

"extreme anxiety, mental suffering, and anguish requiring expensive prescription anti-anxiety medication," which included filling prescriptions for fluoxetine and alprazolam "on more than eight occasions since August 29, 2023, at a cost on each occasion exceeding $400, of which [O'Sullivan] and his medical insurer (a collateral source of which [Martin] cannot claim the benefit) each paid a part." The second amended complaint also added new allegations regarding the Secretary-Treasurer's fiduciary obligations under the bylaws of Local 2 to the already-dismissed defamation *per se* claim.

¶ 12    Martin again filed a motion to dismiss under section 2-615. The court granted the motion, this time dismissing the claim for defamation *per quod* with prejudice on the grounds that O'Sullivan's allegations of special damages remained insufficient to state a cause of action. The court also noted that it had not granted permission to add any new allegations to the already-dismissed claim for defamation *per se*, and it struck those allegations. This appeal follows.

¶ 13    At issue is whether the circuit court erred in dismissing O'Sullivan's claims with prejudice under section 2-615 of the Code. "A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on its face." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15 (citing *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006)). "Under section 2-615, the critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Id.* ¶ 16 (citing *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003)). "In making this determination, all well-pleaded facts must be taken as true." *Id.* (citing *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005)). "A court should dismiss a complaint pursuant to section 2-615 only where no set of facts can be proved

which would entitle the plaintiff to recovery." *Id.* (citing *Marshall*, 222 Ill. 2d at 429). Our review of the dismissal of a complaint under section 2-615 is *de novo*. *Id.* ¶ 15 (citing *King*, 215 Ill. 2d at 12).

¶ 14    O'Sullivan first contests the dismissal of his claim for defamation *per se*. "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009) (citing *Krasinski v. United Parcel Service, Inc.*, 124 Ill.2d 483, 490 (1988)). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.* (citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992)). "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Id.* (citing *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986)). Illinois recognizes five categories of statements that can be considered defamatory *per se*: "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Id.* at 491-92 (citing *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998)).

¶ 15    O'Sullivan contends that Martin's statements accusing him of deliberately spreading false information about money going missing from the pension fund in order to win the election constituted defamation *per se* under both the third and fourth categories recited above, *i.e.*, as

words imputing a lack of integrity in the performance of his employment duties and as words that impute a lack of ability or otherwise prejudice him in his profession. However, as an initial matter, Martin asserts that O'Sullivan forfeited his argument regarding the fourth category because he did not make that argument in the circuit court, citing the well-established principle that issues not raised in the circuit court are deemed forfeited and may not be raised on appeal. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). O'Sullivan responds that forfeiture does not apply because he was only required to "allege facts sufficient to bring a claim within a legally recognized cause of action" (*Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009)) and was not obligated to include legal argument in his complaint. We agree with Martin.

¶ 16    In his initial complaint, O'Sullivan expressly alleged that Martin's statements were defamatory *per se* because "they imputed a want of integrity to Plaintiff in the discharge of the duties Plaintiff would assume as Secretary-Treasurer of Local 2 were he to win the election." This statement directly tracked the language of the third category of defamation *per se* claims, *i.e.* "words that impute a person *** lacks integrity in performing her or his employment duties." *Green*, 234 Ill. 2d at 491. O'Sullivan did not allege in his complaints that Martin's statements met the fourth category. Further, in his response to Martin's motion to dismiss, O'Sullivan again contended that the statements were defamatory *per se* because they "imputed to Mr. O'Sullivan want of integrity incompatible with the fiduciary office he sought." In reciting the rules of law regarding defamation *per se*, O'Sullivan only addressed category three and did not mention category four. Additionally, at the hearing on Martin's motion to dismiss O'Sullivan's initial complaint, the court remarked that it believed that only category three applied to this case, and O'Sullivan did not disagree with that view or argue that the facts supported the application of

category four. Instead, his argument only addressed category three and focused on the issue of integrity. Thus, in the proceedings below, O'Sullivan consistently and exclusively alleged and argued that relief was warranted under category three and did not raise the prospect of relief under category four. Accordingly, the court was not called upon to rule on the issue of whether O'Sullivan's allegations stated a cause of action under category four, and we will not address an argument upon which the circuit court was not granted an opportunity to rule. See *Skokie Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 1052 (1983) ("Issues and arguments which were not presented to or considered by the trial court cannot be raised for the first time on review."). We find that O'Sullivan's arguments regarding category four have been forfeited.

¶ 17    As for whether O'Sullivan stated a cause of action for defamation *per se* under category three, we must first examine the specific allegations underpinning the claim. In his brief, O'Sullivan treats Martin's Facebook comments as essentially a single collective statement that, in order to win the election, O'Sullivan knowingly published a false statement asserting that money went missing from the pension fund while Martin served as Trustee. However, O'Sullivan's initial complaint identified 13 specific statements from Martin's Facebook comments, and they are not all of the same character. Indeed, the 13 complained-of statements can be divided into two different categories, one of which is clearly not defamatory.

¶ 18    Specifically, allegations (a), (e), (g), (h), (i), (j), (k), and (l) in paragraph 32 of O'Sullivan's initial complaint were statements asserting in various ways that no money went missing from the pension fund while Martin served as Trustee. Those statements did not refer to O'Sullivan at all and were instead general factual assertions responding to O'Sullivan's campaign flyer and

defending Martin's prior conduct. Because they were not "about the plaintiff," these statements could not have been defamatory. See *Green*, 234 Ill. 2d at 491; *Andrews v. At World Properties, LLC*, 2023 IL App (1st) 220950, ¶¶ 26-27 (finding that an employer's statement generally repudiating violence, destruction, and illegal activity in a social media post announcing the termination of the plaintiff's employment was not defamatory because it did not refer to the plaintiff and could have been reasonably construed as an innocent defense of the employer's reputation). We agree with the circuit court that these allegations are not sufficient to allege a claim for defamation *per se*.

¶ 19    The second category consists of allegations (b), (c), (d), (f), and (m), which included Martin's comments calling O'Sullivan's statement about the missing funds "BS" and asserting that O'Sullivan knowingly published that allegedly false statement in order to win the election. These statements were about O'Sullivan, making them potentially defamatory, and they operated together to make the assertion that O'Sullivan knowingly lied for politically motivated reasons. Accordingly, we will view them collectively to determine whether they support O'Sullivan's cause of action. See *Gardner v. Senior Living Systems, Inc.*, 314 Ill. App. 3d 114, 119 (2000) (determining the defamatory nature of defendant's statements by viewing them collectively).

¶ 20    O'Sullivan contends that Martin's statements that, in order to win the election, O'Sullivan lied about funds going missing while Martin was Trustee of Local 2's pension fund amounted to defamation *per se* because it imputed that he lacked integrity to serve as Secretary-Treasurer, a position that carried fiduciary duties and for which integrity is an important qualification. He argues that the allegations in his initial complaint were sufficient to state a claim and that the circuit court erred in failing to accept the allegations in the complaint as true and to view them in a light

most favorable to him as the plaintiff. Martin counters that O'Sullivan's allegations were insufficient to state a claim because his statements generally did not impute a lack of integrity, O'Sullivan did not yet hold the office for which he claims his integrity was damaged, and, in the alternative, the statement was not an assertion of fact and was instead an opinion that was protected under the first amendment. We will address each argument in turn.

¶ 21     The first issue is whether Martin's assertion that O'Sullivan knowingly lied about missing money from the pension fund in order to win the election imputed a lack of integrity in the performance of the duties of office. O'Sullivan cites *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402 (1988), as supportive of his argument, and we find that it is dispositive.

¶ 22     In *Costello*, a newspaper published an editorial asserting, in various ways, that a county board member's actions while in office revealed that, during his campaign, the board member lied to the newspaper and voters about his position on the imposition of new taxes. *Id.* at 411-12. The board member brought an action for defamation *per se* and the complaint was dismissed. *Id.* at 413. The appellate court then reversed, finding that the newspaper had "made factual statements that the plaintiff deliberately lied for politically motivated reasons," which "imputed to the plaintiff an inability to perform his duties and a want of integrity or lack of honesty in performing the duties of his office." *Costello v. Capital Cities Media, Inc.*, 111 Ill. App. 3d 1009, 1014, 1016 (1982) (*Costello I*). In a second appeal following a trial on remand, the appellate court "reaffirmed" that conclusion (*Costello v. Capital Cities Communications, Inc.*, 153 Ill. App. 3d 956, 967 (1987) (*Costello II*), and the supreme court then agreed with the appellate court's conclusion on the issue, observing that the defamatory meaning of the statements in the editorial was "evident" and that the statements "are to be considered libelous *per se* because they imputed to Costello a want of

integrity in discharging the duties of his office" (*Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 417 (1988) (*Costello III*)).

¶ 23    As in *Costello*, the statements at issue in the present case asserted that a candidate for office lied in an attempt to win an election. The *Costello* court agreed that such an assertion imputes a lack of integrity in performing the duties of the candidate's office, which applies to the present case. We find that Martin's assertion that O'Sullivan knowingly lied about the missing pension funds in order to win the election plainly imputed a lack of integrity sufficient to plead a claim for defamation *per se*.

¶ 24    Martin attempts to distinguish *Costello* on the grounds that O'Sullivan did not hold the position for which he claims his integrity was damaged and that the statements at issue did not reference any actions that O'Sullivan took in any professional capacity, but we are unpersuaded by that argument. In *Becker v. Zellner*, 292 Ill. App. 3d 116, 126 (1997), this court concluded that prospective employees could bring a claim for defamation *per se* for statements that their prior employer made to a potential new employer with the intent of damaging their employment prospects. While that was a category four case concerning "words that prejudice a party, or impute lack of ability, in his or her trade, profession or business," category four is similar to category three in that both concern statements attacking someone's employment qualifications, and we see no reason why *Becker*'s holding on this point should not apply to the present case. The fact that O'Sullivan was only a candidate for office does not affect our conclusion that Martin's statements can be defamatory *per se* under category three as statements that imputed a lack of professional integrity.

¶ 25     In the alternative, Martin argues that, even if we conclude that his statements impute a lack of integrity, his Facebook comments were nonetheless protected under the first amendment. "[A] statement will receive first amendment protection from defamation suits if it cannot be reasonably interpreted as stating actual facts about the plaintiff." *Maag v. Illinois Coalition for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 851 (2006) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). "To determine whether a statement implies the existence of facts about the plaintiff, three factors are considered." *Id.* (citing *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518 (1998)). "'First, we consider whether the language of the statement has a precise and readily understood meaning, while bearing in mind that the first amendment protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts.'" *Id.* (quoting *Hopewell*, 299 Ill. App. 3d at 518). Second, we consider whether the context of the statement negates the impression that the statement is factual. *Id.* (citing *Hopewell*, 299 Ill. App. 3d at 519). Third, we consider whether the statement can be objectively verified as true or false. *Id.* (citing *Hopewell*, 299 Ill. App. 3d at 519).

¶ 26     Martin only presents argument on the first of these considerations, contending that his statements about O'Sullivan consisted of rhetorical language and subjective opinions that cannot be reasonably interpreted as factual assertions. For support, he cites cases in which courts have granted first amendment protection to statements calling someone "unethical" (*Gardner v. Senior Living Systems*, 314 Ill. App. 3d 114, 120 (2000)) and calling someone a "con artist" and warning others to "watch out for the [plaintiff's] bulls**t" (*Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 866-67 (1995)). However, we find those cases distinguishable because they concerned general statements about the plaintiff's character that were not tied to specific factual assertions.

- 14 -

As the appellate court in *Costello I* observed, making an allegation that someone "is a 'liar' can be seen as a factual assertion unprotected by absolute privilege when the derogatory remark is laden with factual content, as opposed to mere name-calling." *Costello I*, 111 Ill. App. 3d at 1016. Indeed, "when an opinion is 'something more than a generally derogatory remark but is laden with factual content,' the first amendment does not confer absolute immunity." *Id.* (quoting *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 63 (2d Cir. 1980)).

¶ 27 Martin's statements in this case asserting that O'Sullivan knew his allegation about missing funds was "BS," but he made the statement anyway to help his campaign, did not assert that O'Sullivan was a liar in general, but instead alleged that O'Sullivan was lying about the specific fact that funds had gone missing from the pension fund during Martin's time as trustee. Thus, Martin's statements can be reasonably interpreted as expressing a particular factual assertion and not a general opinion, and the statement accusing O'Sullivan of lying about the missing funds was, therefore, not protected by the first amendment. Accordingly, for the foregoing reasons, we conclude that O'Sullivan stated a cause of action for defamation *per se* with respect to allegations (b), (c), (d), (f), and (m), only and that the circuit court erred in dismissing the claim.

¶ 28 Next, O'Sullivan asserts that the circuit court erred in dismissing his claim for defamation *per quod* on the grounds that he had not adequately pleaded special damages, as is required to state such a claim. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996). However, we affirm this dismissal on other grounds, namely that O'Sullivan's *per quod* claim is duplicative of his *per se* claim. See *Taylor, Bean, & Whitaker Mortgage Corp. v. Cocroft*, 2018 IL App (1st) 170969, ¶ 60 (noting that an appellate court "may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct").

¶ 29    There are two circumstances in which a plaintiff may bring a cause of action for defamation *per quod*. *Bryson*, 174 Ill. 2d at 103. "First, a *per quod* claim is appropriate where the defamatory character of the statement is not apparent on its face, and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning." *Id.* "A *per quod* action is also appropriate, however, where a statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*." *Id.* "In such *per quod* actions, the plaintiff need not plead extrinsic facts, because the defamatory character of the statement is apparent on its face and resort to additional facts to discern its defamatory meaning is unnecessary. The action is one for defamation *per quod* simply because the statement does not fall into one of the actionable *per se* categories." *Id.*

¶ 30    Neither circumstance applies in this case. O'Sullivan's defamation *per quod* claim is materially identical to his claim for defamation *per se*, as it is premised on the same 13 statements from Martin's Facebook comments and does not rely on extrinsic facts to prove their defamatory character. We have already found that some of those statements are actionable as defamation *per se*. While O'Sullivan also attempted to plead special damages, our supreme court has held that, in a case such as this, where a defamatory statement is actionable *per se*, the plaintiff does not need to plead special damages and a *per quod* claim regarding the same statement is rendered "redundant and unnecessary." *Bryson*, 174 Ill. 2d at 104. Accordingly, we affirm the dismissal of O'Sullivan's duplicative claim for defamation *per quod*.

¶ 31    Lastly, O'Sullivan argues that he sufficiently stated a claim for false light invasion of privacy. "The tort of false light invasion of privacy protects a person's interest in being let alone from false publicity." *Benton*, 2020 IL App (1st) 190549, ¶ 83 (citing *Dubinsky v. United Airlines*

*Master Executive Council*, 303 Ill. App. 3d 317, 331 (1999)). "Three elements are required to satisfy such a cause of action: (1) the plaintiffs were placed in a false light before the public as a result of the defendants' actions, (2) the false light in which the plaintiffs were placed would be highly offensive to a reasonable person, and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Id.* (citing *Kolegas*, 154 Ill. 2d at 17-18).

¶ 32    The circuit court found that Martin's statements accusing O'Sullivan of making a false statement about missing pension funds to win the election would not have been highly offensive to a reasonable person. O'Sullivan's argument for reversal, however, consists of a single conclusory assertion that "[t]hese allegations state a claim of false light-invasion of privacy, as any reasonable person would find it highly offensive to be accused of lying in order to win an election," followed by citation to *Costello III*'s observation that calling a politician a liar had an "evident" defamatory character. See *Costello III*, 125 Ill. 2d at 417. We find this argument both unpersuasive and inadequate under the rules governing appellate briefs. In accordance with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), "[a] reviewing court is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; it is not merely a repository into which an appellant may 'dump the burden of argument and research.'" *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). Indeed, an appellant's reliance on a conclusory, one-sentence argument is grounds for finding the argument forfeited. See *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33.

¶ 33    Furthermore, O'Sullivan fails to demonstrate that the circuit court erred in finding that Martin's comments would not be highly offensive to a reasonable person. The court's statement

in *Costello III* regarding the "evident" defamatory nature of a statement accusing a candidate for office of lying to win an election did not concern the claim of false light invasion of privacy and instead related to the claim of defamation *per se*. O'Sullivan's scant argument on this issue does not persuade us that such a statement being defamatory *per se* necessarily means that it is also highly offensive to a reasonable person. O'Sullivan has not met his burden of demonstrating error on this issue.

¶ 34    In sum, we conclude that the circuit court erred in dismissing part of O'Sullivan's claim for defamation *per se*, but find no error in the court's dismissal of O'Sullivan's claims for defamation *per quod* and false light invasion of privacy. Therefore, the circuit court's order granting Martin's motion to dismiss O'Sullivan's initial complaint is affirmed as to the claim of false light invasion of privacy and reversed in part as to the claim of defamation *per se*; the court's order granting Martin's motion to dismiss O'Sullivan's second amended complaint is affirmed; and the matter is remanded for further proceedings.

¶ 35    Affirmed in part, reversed in part, and remanded with instructions.