ROLLAND E. MAIN, Plaintiff-Appellant, v. RICK BAKER *et al.*, Defendants-Appellees.

Third District   No. 3—87—0855

Opinion filed November 7, 1988.—Modified opinion filed November 10, 1988.

Barash, Stoerzbach & Henson, of Galesburg (Barry M. Barash, of counsel), for appellant.

R. Michael Henderson, of Quinn, Johnston, Henderson & Pretorius, of Peoria (Mary W. McDade, of counsel), for appellees Rick Baker and The Peoria Journal Star.

Davis & Morgan, of Peoria, and Richard N. Winfield, David A. Schulz, and Annette V. Tucker, all of Rogers & Wells, of New York, New York (Stephen D. Gay, of counsel), for appellees Bob Springer and The Associated Press.

JUSTICE HEIPLE delivered the opinion of the court:

This appeal arises from a libel action brought against Rick Baker, the Peoria Journal Star, and Bob Springer of the Associated Press. The plaintiff, Rolland E. Main, claims that Rick Baker had written a libelous article published in the Peoria Journal Star and that Bob Springer had written a similar article which had been disseminated by the Associated Press to a number of its members. Following a dismissal of plaintiff's complaint in the circuit court of Peoria County, the libel action was dismissed with prejudice.

In the instant case, the plaintiff and his two business associates, John Curry and United States Agriculture Secretary John Block, were unsecured creditors of J. Catton Farms, Inc. (Catton Farms), in the amount of $350,000. Within 90 days of filing for bankruptcy, Catton Farms secured its debt to the plaintiff and his partners by transferring a junior mortgage on certain farmland to them. A petition was filed by the bankruptcy trustee for Catton Farms seeking to declare the transfer null, as an avoidable preference under section 547 of the Bankruptcy Code (11 U.S.C. §547 (1982)).

On July 17, 1984, the day after the bankruptcy proceeding against Block, Curry and the plaintiff Main was initiated, the Peoria Journal Star printed an article headlined, "Block accused of illegal investment shuffle." The article, which was written by Rick Baker, referred to the transaction between Catton Farms, the plaintiff, and his partners as "illegal." An Associated Press correspondent, Bob

Springer, saw the article and determined it was appropriate for wider publication because it involved the business dealings of John Block, a high governmental official. Before transmitting the news report over the AP wire, Springer confirmed the article by obtaining a copy of the complaint and by interviewing Greg Grimsley, the attorney for the bankrupt's trustee.

The essence of the plaintiff's dispute is over the use of the term "illegal" to characterize the transaction between Catton Farms and the plaintiff and his partners. The plaintiff alleges that the use of the word "illegal" imputed to the plaintiff the commission of a crime. The defendants maintain that the news stories are susceptible to "innocent construction" and that the use of the word "illegal" was not defamatory when describing a voidable preference.

For a complete resolution of this case, it is necessary that this court address two issues. First, whether the claims brought against the Peoria Journal Star abated with the death of Rick Baker and, second, whether the news reports in the instant case were defamatory.

On March 4, 1988, Rick Baker died in an automobile accident. The plaintiff does not contest that the claim brought against Rick Baker abated with his death. The plaintiff contends, however, that since the Peoria Journal Star was sued jointly and severally with the reporter, the fact that the reporter died does not release the newspaper. For reasons set out below, we cannot agree.

■ It appears from a close reading of the plaintiff's second amended complaint that the plaintiff sued the Peoria Journal Star under the theory of *respondeat superior*. The counts of the complaint which are directed against the newspaper allege that Rick Baker was an employee of the Peoria Journal Star and "was acting within the course and scope of his employment." They further state that "Rick Baker knew these statements to be false, or believing them to be true, lacked reasonable grounds for that belief, or failed to make reasonable investigation into the truth of the statements contained in the article." The complaint alleged no independent wrong on behalf of the newspaper. If the newspaper had been jointly and severally sued as contended by plaintiff, the claim against the newspaper would survive Baker's death. In fact, however, the complaint was not so constructed. As pleaded, the claim is entirely derivative. Thus, with Baker's death and the abatement of the claim against him, there is no basis for an assessment of liability against the employer. *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217.

We now turn to the libel cause of action brought against the As-

sociated Press and its reporter, Bob Springer, and the issues there appertaining, namely: Were the published words defamatory?

■ The plaintiff's second amended complaint charged the Associated Press and Bob Springer with the following defamatory statements:

> "a. U.S. Agricultural Secretary John Block and two partners were accused today of illegally recovering investments ***.
>
> b. The accusations were made in Federal Court in Peoria by an attorney for the court appointed trustee ***.
>
> c. Secretary John Block and two partners illegally recovered money owed them ***.
>
> d. Grimsley '*** said it was illegal in this case since Catton farms filed for bankruptcy less than ninety days after the transaction.' "

An Illinois court is obligated to construe these challenged statements innocently, if at all possible. The Illinois Supreme Court in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, provided the following guidelines for applying the innocent construction rule in Illinois:

> "We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted *** it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance ***." (92 Ill. 2d at 352, 442 N.E.2d at 199.)

Therefore, this court must determine if the trial court below properly applied the standard enunciated in *Chapski* to the plaintiff's allegations.

■ The plaintiff asserted in his brief that he has been defamed *per se*. Illinois law recognizes defamation *per se* for statements imputing the commission of a criminal offense. (*Owen v. Carr* (1986), 113 Ill. 2d 273, 277, 497 N.E.2d 1145, 1147.) To sustain a claim of defamation *per se*, this court would have to find that the term "illegal" is necessarily synonymous with "criminal." We do not so find.

■ The word "illegal" does not necessarily impute criminal activity to the plaintiff. The definition of "crime," unlike the term "illegal," connotes a more serious offense which merits specific types of penal sanction. "Illegal," on the other hand, could be innocently construed to mean that the actions were merely not authorized by law.

The terms "criminal" and "illegal" can describe very different types of behavior.

■ Section 547 of the Bankruptcy Code prohibits transactions which constitute a "preference." A "preference" is a transfer of estate assets within 90 days of the filing of the bankruptcy petition, to one or some favored creditors in a manner which permits greater recovery by them than by other similarly situated creditors. (11 U.S.C. §547 (1982).) The Bankruptcy Code authorizes the bankruptcy trustee to void the transaction and retrieve the assets improperly removed from the estate. Therefore, a violation of this provision is not authorized by the Bankruptcy Code and could fairly be characterized as "illegal." See *Angeles Real Estate Co. v. Kerxton* (4th Cir. 1984), 737 F.2d 416, 418 ("trustee recovered the payment to the bank because it amounted to an *illegal* preference"). (Emphasis added.)

■ This innocent interpretation is buttressed by the fact that the challenged article specifically explained that the underlying transaction involved no more than securing a previously unsecured debt, but that "federal bankruptcy law bars creditors from gaining a special advantage to recover debts within 90 days of a bankruptcy filing." The article further stated that "normally, such actions by Block and his partners would be wise." In context, the use of the term "illegal" was susceptible to innocent construction and did not impute to the plaintiff the commission of a crime. Consequently, the Associated Press article in the present case was not defamatory *per se*.

For the reasons stated, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY and SCOTT, JJ., concur.