DAVIS, Justice.
[¶1] Plaintiff Cynthia Hill filed a complaint against Defendant Timothy Stubson, asserting claims for defamation per se and injunctive relief after he made statements critical of her performance as Superintendent of Public Instruction. The district court found that Mr. Stubson's statements implicated First Amendment concerns and dismissed Ms. Hill's complaint for failure to allege facts sufficient to support the constitutionally-required showing of actual malice. We affirm the dismissal of Ms. Hill's complaint, though on grounds different from those expressed by the district court.
ISSUES
[¶2] Ms. Hill presents five issues on appeal, which we summarize and restate in the following three issues:
1. Did Ms. Hill's complaint allege facts sufficient to state a claim for actual malice?
2. Was Ms. Hill's complaint subject to dismissal under W.R.C.P. 12(b)(6) for failure to allege facts sufficient to state a claim for defamation per se?
3. Did the district court err in denying Ms. Hill's motion to disqualify the assigned judge for cause pursuant to W.R.C.P. 40.1(b)(2) ?
FACTS
[¶3] By way of background, this defamation action relates to a controversy that arose while Ms. Hill was serving as Wyoming's Superintendent of Public Instruction. In January 2013, the Wyoming Legislature passed a law, commonly known as SF104, that significantly constricted the superintendent's authority and duties. Ms. Hill filed a legal action challenging the constitutionality of SF104, and that case resulted in a ruling from this Court declaring the legislation unconstitutional. Powers v. State , 2014 WY 15, 318 P.3d 300 (Wyo. 2014).
[¶4] In 2016, Mr. Stubson, who as state legislator voted in favor of SF104, was running for the United States House of Representatives. During his campaign, Mr. Stubson *736 was asked about his support for the legislation, and in response, he made statements critical of Ms. Hill's performance as superintendent.
[¶5] On February 22, 2016, Ms. Hill filed a complaint against Mr. Stubson alleging defamation per se and seeking injunctive relief. On April 11, 2016, Mr. Stubson responded with a Rule 12 motion for a more definite statement and a motion to strike. On that same date, the district judge assigned to the case, Judge Daniel Forgey, sua sponte issued an order reassigning the case to the Honorable Thomas T.C. Campbell in the First Judicial District.
[¶6] On May 26, 2016, Ms. Hill filed a W.R.C.P. 40.1(b)(2) motion to disqualify Judge Campbell for cause. As grounds for her motion, she pointed to his adverse rulings in her prior action challenging the constitutionality of SF104, and she claimed that because he faced public criticism for his rulings, he developed a bias against her. Judge Campbell assigned the motion to the Honorable Wade Waldrip in the Second Judicial District for hearing, and on June 27, 2016, Judge Waldrip entered an order denying the motion. In his ruling, he explained:
Here, Ms. Hill points to no fact, nor has she articulated in argument, that the rulings of Judge Campbell somehow show bias or prejudice against her. Ms. Hill does not direct this Court's attention to anything in the record suggesting that Judge Campbell harbored personal bias or prejudice against her. Instead, Ms. Hill appears to rely upon the fact that Judge Campbell's decisions and rulings in the previous case were adverse to her and/or were not publicly popular as grounds for forming an unsupported conclusion that Judge Campbell now is prejudiced against her in the current litigation. Ms. Hill has provided no evidence that Judge Campbell has formed an opinion about this action; has a personal bias for or against any of the parties; or that his decision in the prior case was based on any grounds other than the evidence placed before him. See TZ Land & Cattle Co. v. Condict , 795 P.2d 1204 (Wyo. 1990). Without a valid reason for recusal, Judge Campbell still has what has been termed a "duty to sit." See Hopkinson v. State , 679 P.2d 1008, 1031 (Wyo. 1984).
[¶7] Judge Campbell thereafter heard argument on Mr. Stubson's motion for a more definite statement and motion to strike portions of the complaint. The court denied and granted each motion in part, and also granted Ms. Hill leave to amend her complaint.
[¶8] On December 12, 2016, Ms. Hill filed her amended complaint. The amended complaint alleged that Mr. Stubson made defamatory statements about Ms. Hill on two occasions. The complaint described those statements as follows (emphasis and brackets in original):
10. On February 8, 2016, on his Stubson for Congress Facebook Account, a journalist from Fremont County, Wyoming asked for the Defendant's position on his vote in January of 2013 on legislation called "SF104." SF104 related to the divesting of duties from the elected Superintendent of Public Instruction and transfer of those duties to a governor appointee. SF104 was later held to be unconstitutional by the Wyoming Supreme Court in a case entitled Powers v. Mead . On February 8, 2016, in response to the question relating specifically to his vote on SF104, the Defendant broadcasted and published to the over 800 persons connected to his Facebook Account that Cindy Hill (the Plaintiff) was not following the law and was out of control.
11. In the same posting, the Defendant declared, broadcasted, and published that, in reference to SF104, we [the Wyoming Legislature] had to stop her (referring to the Plaintiff).
12. In the same posting, the Defendant declared, broadcasted and published through the Facebook Account that the Plaintiff had committed many illegal acts that they [legislators] did not disclose publicly. On the face of the declaration and publication, the statements attributed flagrant and wide spread criminal wrongdoing, which was not true.
* * *
15. * * * In a debate held in Cheyenne, Wyoming on June 24, 2016, hosted *737 by the Cheyenne Chamber of Commerce and KGAB radio, the Defendant was asked about SF104. The following exchange occurred as reflected in Exhibit "B" to this Amended Complaint:
MR. FREEMAN: You were a big proponent of SF-104, which basically would take our rights of the people here in Wyoming to be able to vote who we wanted for for superintendent of public instruction. I believe Senator Leland Christensen also supported that. Not only did you support it, you pushed for it. It was shot down a few different times by the Supreme Court.
Because of your record here concerning that here, how can we expect you to represent us in Washington, D.C., sir?
MR. STUBSON: Well, I think you mischaracterize the legislation. Everyone had the right to vote for the superintendent. What we did is we talked about what powers that the superintendent would have.
And you know, frankly that's the beauty of experience. We did-the bill went before the Supreme Court, and the Supreme Court on a 3-2 ruling decided that it did not pass constitutional muster. And-and we went back to the drawing board to answer those issues and make sure that we had an education system that really responded to the education of our kids, and that was really the fundamental issue. When you had a state department that wasn't answering its really basic obligations around the state of Wyoming, something needs to-something needed to happen.
MR. FREEMAN: (Inaudible) taking the vote away from the people and installing Dick Crandall by the governor was the solution, sir?
MR. STUBSON: No, that's not what I said. What I said is that we had to change those duties that the superintendent was not fulfilling, and I felt we needed to put them in other hands. And the Supreme Court disagreed, and so we went back to the drawing board, and that's okay. And I-I stand-I'll live by that Supreme Court decision, and that's because of what I was just talking about, the rule of law. The Supreme Court made that decision, so we went back and continued our work to make sure that the kids of Wyoming got a first-class education-
MR. FREEMAN: Thank you, sir.
[¶9] On January 3, 2017, Mr. Stubson filed a W.R.C.P. 12(b)(6) motion to dismiss on the grounds that his statements about Ms. Hill were First Amendment-protected speech, and that the complaint failed to allege facts sufficient to show actual malice. On July 26, 2017, the district court entered an order granting the motion to dismiss. The court explained:
20. Ultimately, taking Plaintiff's allegations as true, Plaintiff has not made out a claim of actual malice. This strict standard requires proof that is clear, precise, and unmistakable, free from serious and substantial doubt. In this case, Plaintiff's allegations are insufficient and instead require the inference of actual malice from, at best, a tenuous set of facts.
[¶10] On August 17, 2017, Ms. Hill timely appealed both the order denying her motion to disqualify Judge Campbell, and the order dismissing her complaint.
STANDARD OF REVIEW
[¶11] We review Rule 12(b)(6) dismissals de novo . Whitham v. Feller , 2018 WY 43, ¶ 13, 415 P.3d 1264, 1267 (Wyo. 2018) (citing Bush Land Dev. Co. v. Crook Cty. Weed & Pest Control Dist. , 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017) ).
When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief.
Whitham , ¶ 13, 415 P.3d at 1267 (quoting Bush Land Dev. Co ., ¶ 7, 388 P.3d at 539 ).[1]
*738 DISCUSSION
A. Sufficiency of Actual Malice Allegations
[¶12] The First Amendment limits the circumstances under which a public official may maintain a defamation action for statements critical of her official conduct. New York Times Co. v. Sullivan , 376 U.S. 254, 283, 84 S.Ct. 710, 727, 11 L.Ed.2d 686 (1964). "[T]he constitutional guarantees of free speech and press prohibit a public official from recovering damages for defamatory statements unless it can be shown that the statements were made with actual malice." Martin v. Comm. for Honesty and Justice at Star Valley Ranch , 2004 WY 128, ¶ 9, 101 P.3d 123, 127 (Wyo. 2004) (citing New York Times v Sullivan , 376 U.S. at 279, 84 S.Ct. at 726 ). Acting on this premise, the district court dismissed Ms. Hill's complaint based on its dual conclusion that Ms. Hill was a public official for First Amendment purposes and that her complaint failed to allege facts sufficient to support a finding of actual malice. We agree that Ms. Hill's complaint alleges facts sufficient to establish her status as a public official for First Amendment purposes, but we disagree that her complaint failed to sufficiently allege actual malice.[2]
1. Public Official
[¶13] Shortly after the Supreme Court decided New York Times v. Sullivan , it issued another decision in which it addressed who should be considered a public official for purposes of imposing the First Amendment actual malice requirement. Rosenblatt v. Baer , 383 U.S. 75, 85, 86 S.Ct. 669, 675-76, 15 L.Ed.2d 597 (1966). In Rosenblatt , the plaintiff was a former county recreation area supervisor who filed a libel action in response to a newspaper column that criticized his performance as area supervisor and implied he may have taken or misused the area's funds. Id. at 77-78, 86 S.Ct. at 671-72. In considering whether a recreation area supervisor was a public official for purposes of the New York Times v. Sullivan rule, the Court declined to draw any precise lines. Id. at 85, 86 S.Ct. at 675.
The motivating force for the decision in New York Times was twofold. We expressed "a profound national commitment to the principle that debate on public issue should be uninhibited, robust, and wide-open, and that (such debate) may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S., at 270, 84 S.Ct. at 721. (Emphasis supplied.) There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.
This conclusion does not ignore the important social values which underlie the law of defamation. Society has a pervasive and strong interest in preventing and redressing attacks upon reputation. But in cases like the present, there is tension between this interest and the values nurtured by *739 the First and Fourteenth Amendments. The thrust of New York Times is that when interests in public discussion are particularly strong, as they were in that case, the Constitution limits the protections afforded by the law of defamation. Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in New York Times are present and the New York Times malice standards apply.
Rosenblatt , 383 U.S. at 85, 86 S.Ct. at 675-76 (footnotes omitted and emphasis added).
[¶14] In applying this framework to the case before it in Rosenblatt , the Court observed that based on the plaintiff's own assertions of his prominence in the community and the public interest in the recreation area, a strong argument could be made that plaintiff was a public official. Rosenblatt , 383 U.S. at 87, 86 S.Ct. at 676. The Court also recognized, however, that New York Times v. Sullivan had not been decided when the plaintiff's case was tried, and it concluded that the plaintiff should have an opportunity on remand to address not only the question of actual malice, but also the question of whether he was a public official. Id. at 87-88, 86 S.Ct. at 677. In so remanding, however, the Court observed:
We remark only that, as is the case with questions of privilege generally it is for the trial judge in the first instance to determine whether the proofs show respondent to be a "public official."
Rosenblatt , 383 U.S. at 88, 86 S.Ct. at 677 (footnote omitted); see also World Wide Ass'n of Specialty Programs v. Pure, Inc. , 450 F.3d 1132, 1137 (10th Cir. 2006) (public figure determination is question of law reviewed de novo ).
[¶15] Importantly, the Court in Rosenblatt found the fact that the plaintiff no longer held the position of recreation supervisor to be of no significance to the public official inquiry.
It is not seriously contended, and could not be, that the fact respondent no longer supervised the Area when the column appeared has decisional significance here. To be sure, there may be cases where a person is so far removed from a former position of authority that comment on the manner in which he performed his responsibilities no longer has the interest necessary to justify the New York Times rule. But here the management of the Area was still a matter of lively public interest; propositions for further change were abroad, and public interest in the way in which the prior administration had done its task continued strong. The comment, if it referred to respondent, referred to his performance of duty as a county employee.
Rosenblatt , 383 U.S. at 87 n.14, 86 S.Ct. at 676 n.14.
[¶16] The Tenth Circuit Court of Appeals ruled similarly in a case involving a retired deputy director of the Federal Bureau of Investigation (FBI). Revell v. Hoffman , 309 F.3d 1228, 1232-33 (10th Cir. 2002). In rejecting the plaintiff's argument that the actual malice standard did not apply because he was no longer with the FBI, the court explained:
That the person defamed no longer holds the same position does not by itself strip him of his status as a public official for constitutional purposes. If the defamatory remarks relate to his conduct while he was a public official and the manner in which he performed his responsibilities is still a matter of public interest, he remains a public official within the meaning of New York Times .
Revell , 309 F.3d at 1232-33 (quoting Gray v. Udevitz , 656 F.2d 588, 591 n.3 (10th Cir. 1981) ).
[¶17] Applying this framework, we conclude that Ms. Hill's complaint alleges facts sufficient to support a finding that she was a public official for First Amendment purposes when Mr. Stubson made his statements. The complaint alleges that Ms. Hill was sworn in as the Superintendent of Public Instruction in January 2011. That her position was one of five elected state officials is probably sufficient to establish that she held a position of "such apparent importance that *740 the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." Rosenblatt , 383 U.S. at 86, 86 S.Ct. at 676. We need not, however, rely on that fact alone. The complaint goes on to allege the importance of Ms. Hill's work to the state and those who elected her, and it alleges the importance of her position as an office originally created by the first territorial legislature, as a member of the Wyoming Board of Land Commissioners, and as an ex officio member of the University of Wyoming Board of Trustees. We are thus satisfied that the complaint alleges facts sufficient to establish that the superintendent of public instruction is a public official for First Amendment purposes.
[¶18] Because, however, Ms. Hill no longer held that position when the allegedly defamatory statements were made, we must also consider whether the complaint alleges facts sufficient to show continuing public interest in SF104 and Ms. Hill's performance in the office. We again conclude that it does. The complaint is replete with allegations of public interest in SF104 and allegations that Ms. Hill was very much a part of that public controversy. Paragraphs 39 and 40, in particular, allege:
39. As soon as SF104 was signed by the governor, Mrs. Hill served the governor and the legislature (through the State of Wyoming) with a lawsuit challenging the constitutionality of SF104. The leadership of the legislature did not like being defied or challenged in court. Those who had sponsored and supported SF104 were not prepared for the public's response to what they had done.
40. The public reaction to SF104 was immediate. Members of the public became outraged and were condemning of legislators who had supported SF104. Legislators were flooded by thousands of emails, phone calls, and visits from members of the public who felt that those legislators had taken their vote in education.
[¶19] The complaint also contains allegations sufficient to support a finding that the public interest in SF104 and Ms. Hill's tenure as superintendent had not waned when Mr. Stubson made his statements. The complaint alleges that the first statement, posted on Facebook, was made in response to a question from a journalist concerning SF104, and the second statement was made in response to an inquiry at a public debate. That these questions were being asked in 2016 indicates that the SF104 controversy was still a matter of public interest when Mr. Stubson made his statements.
[¶20] For these reasons we agree with the district court's finding that Ms. Hill was a public official for First Amendment purposes and was therefore required to allege facts sufficient to support a claim of actual malice. We turn then to the complaint's allegations relevant to Ms. Hill's required showing that Mr. Stubson made his statements with actual malice.
2. Actual Malice
[¶21] Actual malice means the allegedly defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." Martin , ¶ 18, 101 P.3d at 131 (quoting Davis v. Big Horn Basin Newspapers, Inc. , 884 P.2d 979, 984 (Wyo. 1994) ). It is a subjective standard that focuses on the defendant's state of mind. Martin , ¶ 18, 101 P.3d at 131-32.
" 'knowledge of falsity' involves a subjective awareness of the falsity of the statements, and 'reckless disregard' involves sufficient evidence to permit an inference that the defendant must have, in fact, subjectively entertained serious doubts as to the truth of the statements."
Martin , ¶ 18, 101 P.3d at 132 (quoting Oil, Chemical and Atomic Workers Int'l Union v. Sinclair Oil Corp. , 748 P.2d 283, 287 (Wyo. 1987) ) (emphasis in original).
[¶22] "Actual malice, under New York Times v. Sullivan , concentrates on the defendant's attitude toward the truth or falsity of the material published, and does not focus on the defendant's attitude toward the plaintiff." MacGuire v. Harriscope Broad. Co. , 612 P.2d 830, 842 (Wyo. 1980) (Rooney, J., specially concurring) (citing *741 Cantrell v. Forest City Publ'g Co. , 419 U.S. 245, 251-52, 95 S.Ct. 465, 469-70, 42 L.Ed.2d 419 (1974) ) (emphasis omitted). In keeping with that focus, we have said that "bad or corrupt motives, spite, hostility, ill will, or deliberate intention to harm are not material" to a determination of actual malice. Adams v. Frontier Broad. Co. , 555 P.2d 556, 563 (Wyo. 1976) (citing Beckley Newspapers Corp. v. Hanks , 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967) ; Rosenblatt , 383 U.S. at 84, 86 S.Ct. 669 ).
[¶23] Paragraphs 17 through 60 of Ms. Hill's complaint are contained within a section of the complaint labeled "Actual Malice and Intent to Harm." These are allegations that largely relate to Mr. Stubson's alleged personal hostility toward Ms. Hill, not to Mr. Stubson's attitude toward the truth or falsity of his statements, and are thus generally irrelevant to the question of actual malice. Nonetheless, while the relevant allegations may be scant, we find them sufficient to state a claim for actual malice. The complaint alleged:
¶ 44: an allegation that an independent investigation ordered by the legislature found no wrongdoing by Ms. Hill (from which one might again infer Mr. Stubson knew his statements were not consistent with the investigation results and were therefore false);
¶ 64: an allegation that "Defendant knew that the communications were intentionally false."
[¶24] In the present posture of this case, we must accept the complaint's allegations as true and view them in the light most favorable to Ms. Hill. That being the case, we find that the complaint states facts sufficient to support a claim for actual malice. For the reasons that follow, however, we find that the complaint fails to allege facts sufficient to state a claim for defamation per se, and on that ground, we uphold the district court's Rule 12(b)(6) dismissal.[3]
B. Sufficiency of Defamation Per Se Allegations
[¶25] "A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held." Hoblyn v. Johnson , 2002 WY 152, ¶ 41, 55 P.3d 1219, 1233 (Wyo. 2002). Wyoming recognizes two general classes of defamation: defamation with special damages and defamation per se. Stevens v. Anesthesiology Consultants of Cheyenne, LLC , 2018 WY 45, ¶ 40, 415 P.3d 1270, 1284-85 (Wyo. 2018) ; Hoblyn , ¶ 41, 55 P.3d at 1232-33. Defamation with special damages is actionable only if the plaintiff suffers special harm, meaning the "loss of something having economic or pecuniary value." Hoblyn , ¶ 42, 55 P.3d at 1233. Defamation per se differs in that damages are presumed and the claim is actionable without special damages.
Defamation per se means a statement which is defamatory on its face and, therefore, actionable without proof of special damages. The only statements classified as defamatory per se or damaging on their face, and which therefore do not require proof of special harm, are those which impute (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with business, trade, profession, or office; or (4) serious sexual misconduct.
Thomas v. Sumner , 2015 WY 7, ¶ 49, 341 P.3d 390, 402 (Wyo. 2015) (quoting Hoblyn , ¶ 41, 55 P.3d at 1233 ).
[¶26] Ms. Hill's complaint seeks relief for the statements Mr. Stubson made on February 8, 2016 and June 24, 2016.[4] As to those *742 statements, the complaint asserts a claim only for defamation per se. It does not assert a claim for defamation with special damages.[5] Because the claim was only defamation per se, our task is to determine whether the complaint alleges facts sufficient to state such a claim. We will first address the complaint's assertion of defamation per se based on the statements' alleged incompatibility with business, trade, profession, or office, and then its assertion based on the imputation of criminal conduct.
1. Matter Incompatible with Business, Trade, Profession, or Office
[¶27] Ms. Hill's complaint alleges that Mr. Stubson's 2016 statements imputed matters incompatible with business, trade, profession, or office and were therefore actionable as defamation per se. Based on the requirements for this breed of defamation per se, we find that the complaint fails to allege facts sufficient to support the claim.
[¶28] Our law governing claims of defamation per se is drawn from the Restatement (Second) of Torts. Stevens , ¶ 40, 415 P.3d at 1285 ; Hoblyn , ¶ 41, 55 P.3d at 1233. Under the Restatement, statements alleged to be incompatible with business, trade, profession, or office, "to be actionable per se * * * must affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession." Wilder v. Cody Country Chamber of Commerce , 868 P.2d 211, 224 (Wyo. 1994) (quoting Restatement (Second) of Torts § 573, at 194 cmt. e. (1977) ). The Restatement further specifies that "an imputation of misconduct of a public officer whose term has expired does not come within the rule stated in this Section." ( Restatement (Second) of Torts § 573 at 194 cmt. c (1977) ); see also David Elder, Defamation: A Lawyer's Guide § 1:15 (August 2017 update) (plaintiff must be in position at time of statement); Cain v. Esthetique , 182 F.Supp.3d 54, 73 (S.D. N.Y. 2016) (citing Shakun v. Sadinoff , 272 A.D. 721, 74 N.Y.S.2d 556, 557 (1947) ) ("To establish slander per se under this category, the plaintiff must prove that she carried on the trade, business, or profession at the time the statement was made ...."); Knelman v. Middlebury College , 898 F.Supp.2d 697, 726 (D. Vt. 2012) (recognizing claim may be actionable where plaintiff is not currently in position but is actively seeking same or similar position).
[¶29] A federal court in New York explained the requirement that a defamation per se claimant be in the position at the time of the statements.
On the theory that defendant Geneen's description of him as a "communist" impugned his fitness for his two professions, journalism and international diplomacy, plaintiff contends that that description was slanderous per se. We disagree. Geneen's statement was allegedly made some six years after plaintiff left his last post in the foreign service and some two years after he stepped down as President of the United Nations Association. Because plaintiff was not pursuing a career in international relations at the time Geneen is said to have called him a communist, Geneen's statement cannot have impugned him in that career. See Gurtler v. Union Parts Mfg. Co. (1st Dept.1955) 285 App.Div. 643, 140 N.Y.S.2d 254, 258-59, aff'd (1956) 1 N.Y.2d 5, 150 N.Y.S.2d 4 [132 N.E.2d 889] ; Shakun v. Sadinoff (1st Dept.1947) 272 App.Div. 721, 74 N.Y.S.2d 556, 557.
Korry v. Int'l Tel. & Tel. Corp. , 444 F.Supp. 193, 196 (S.D. N.Y. 1978).
[¶30] Ms. Hill's complaint does not allege that she held the office of superintendent when Mr. Stubson made his statements in *743 2016, or that she was actively pursuing that office or a similar office. The complaint therefore fails to state a claim for defamation per se based on statements incompatible with business, trade, profession, or office.[6]
2. Imputation of Criminal Conduct
[¶31] Ms. Hill's complaint alleges that Mr. Stubson's statements that she was not following the law and had committed illegal acts imputed criminal offenses to her and were therefore actionable as defamation per se. We also find these allegations insufficient to state a claim for defamation per se.
[¶32] At the outset, we note that our review of the complaint's allegations must focus on the statements the complaint attributes to Mr. Stubson. Our consideration looks to the words he used, not the characterization Ms. Hill gives the words. See Stevens , ¶ 40, 415 P.3d at 1285 (statements classified as defamatory per se are damaging on their face); Davis , 884 P.2d at 984 (rejecting plaintiff's subjective interpretation of words in evaluating their defamatory content); Dugan v. Mittal Steel USA Inc. , 929 N.E.2d 184, 187 (Ind. 2010) (rejecting plaintiff's attempts to equate "core exchange" with "theft" as a means to state claim for defamation per se); Marcil v. Kells , 936 A.2d 208, 215 (R.I. 2007) (innuendo may not be used to enlarge meaning of language used).
[¶33] To be actionable per se, a statement imputing a criminal offense must reference a crime that is (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude. Restatement (Second) of Torts § 571 (1977). The Restatement describes crimes involving moral turpitude in the following terms:
Moral turpitude has been defined as inherent baseness or vileness of principle in the human heart. It means, in general, shameful wickedness, so extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community. An analogy is found in the common rule that the conviction of a witness for a crime involving moral turpitude is admissible in evidence to impeach or discredit him.
Regardless of the punishment to which the offender may be subjected by the terms of the particular penal code, the charge of a crime involving moral turpitude is actionable per se. Among these crimes are treason, espionage, murder, burglary, larceny, arson, rape, criminal assault, perjury, selling mortgaged chattels or diseased meat, kidnapping, wife beating, malicious mischief, indecent exposure, bootlegging, operating a bawdy house, and uttering a bad check. This is by no means a complete catalogue of offenses. There are many other crimes, such as obtaining goods by false pretenses or making a fraudulent income tax return, that involve moral turpitude.
Restatement (Second) of Torts § 571 cmt. g.
[¶34] Given the Restatement requirements that a defamation per se claim of this type be based on imputation of a criminal offense, the complaint's factual allegations are insufficient. First, the statements in the complaint not only do not specify a criminal offense punishable by imprisonment or involving moral turpitude, they do not charge criminal conduct at all.
[¶35] The term used in the statements was "illegal." Illegal means "not according to or authorized by law." Merriam-Webster's Collegiate Dictionary 618 (11th ed. 2012). The term criminal means "relating to, involving, or being a crime." Id . at 296. Accusing a person of illegal conduct is not the same as accusing her of criminal conduct. See Fink v. Meadow Lake Estates Homeowners' Ass'n , 2016 MT 108N, ¶ 13, 384 Mont. 552 (2016) ("The published statements accused Fink of acting 'illegally,' but did not state she had committed a crime, upon which she premises her claim."); McGee v. Gast , 257 Ga.App. 882, 572 S.E.2d 398, 400-01 (2002) (statement that scoutmaster committed "illegal activities" did *744 not impute a criminal offense); Main v. Baker , 176 Ill.App.3d 255, 125 Ill.Dec. 557, 530 N.E.2d 715, 717 (1988) ("To sustain a claim of defamation per se , this court would have to find that the term 'illegal' is necessarily synonymous with 'criminal.' We do not so find.").
[¶36] Even were we inclined to equate "illegal" and "criminal," the complaint contains no allegations that would elevate Mr. Stubson's statements to the level of defamation per se. The Restatement does not require technical precision in a statement accusing one of criminal conduct, but it must be apparent from the statement that the crime was one punishable by imprisonment or involving moral turpitude. See Restatement (Second) of Torts § 571 cmt. c ("It is not necessary that the defamer charge any particular criminal offense either by name or description, if the words used imply some crime of the type stated in Clauses (a) [punishable by imprisonment] and (b) [involving moral turpitude]."); see also Lovings v. Thomas , 805 N.E.2d 442, 449 (Ind. Ct. App. 2004) (false imputation of a crime must bear some reasonably close relation to the legislative definition of a crime); Graff v. O'Connell , 2002 WL 450534, *2-3 (Conn. Super. Ct. 2002) (statement that plaintiffs were operating illegal kennel not specific enough to be actionable as slander per se). The statements on which the complaint bases Ms. Hill's defamation per se claim contained no suggestion that Ms. Hill had engaged in conduct involving moral turpitude or conduct for which she could be imprisoned. The statements simply lacked the specificity required to be actionable as defamation per se.
[¶37] Because Ms. Hill's complaint failed to allege facts sufficient to state a claim for defamation per se, we uphold the district court's Rule 12(b)(6) dismissal.[7]
C. Order Denying Rule 40.1(b)(2) Disqualification
[¶38] As to her final claim of error, Ms. Hill contends that the district court (Judge Waldrip) erred in denying her Rule 40.1(b)(2) motion to disqualify Judge Campbell for cause based on his alleged bias against her. "A party seeking to disqualify a judge for cause is required to present convincing evidence that the judge harbored such a personal prejudice or bias against him that he or she was unable to impartially base decisions on the law and the evidence." In re Guardianship of Bratton , 2014 WY 87, ¶ 34, 330 P.3d 248, 255 (Wyo. 2014) (citing TZ Land & Cattle Co. v. Condict , 795 P.2d 1204, 1211 (Wyo. 1990) ). We review the district court's decision on a motion to disqualify for an abuse of discretion. Bratton , ¶ 34, 330 P.3d at 255.
A court abuses its discretion when it acts in a manner that exceeds the bounds of reason under the circumstances. Lykins v. Habitat for Humanity , 2010 WY 118, ¶ 9, 237 P.3d 405, 408 (Wyo. 2010) ; Snyder v. Lovercheck , 992 P.2d 1079, 1084 (Wyo. 1999). "The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did." Nish v. Schaefer , 2006 WY 85, ¶ 6, 138 P.3d 1134, 1137 (Wyo. 2006) ; Snyder , 992 P.2d at 1084.
*745 Acorn v. Moncecchi , 2017 WY 83, ¶ 10, 397 P.3d 205, 208 (Wyo. 2017) (quoting Jones v. Artery , 2012 WY 63, ¶ 8, 275 P.3d 1244, 1247 (Wyo. 2012) ).
[¶39] Ms. Hill supported her motion to disqualify with an 18-page affidavit detailing Judge Campbell's rulings that were adverse to her in her SF104 challenge. The affidavit calls out particular aspects of his rulings with which she disagreed, and states her personal interpretations and characterizations of those rulings. It further cites Ms. Hill's perception and assumption that public disagreement with Judge Campbell's ruling must necessarily have resulted in development of a personal bias against her.
[¶40] Having reviewed Ms. Hill's affidavit, we cannot say that the denial of her motion exceeded the bounds of reason. Our precedent is clear that adverse rulings do not alone support a motion to disqualify for cause.
To demonstrate judicial bias, or prejudice, an appellant must show more than the fact that the trial court ruled against him, correctly or incorrectly, on a particular matter. Brown v. Avery , 850 P.2d 612, 616-617 (Wyo. 1993). We have previously explained that
[b]ias is a leaning of the mind or an inclination toward one person over another. The bias which is a ground for disqualification of a judge must be personal, and it must be such a condition of the mind which sways judgment and renders the judge unable to exercise his functions impartially in a given case or which is inconsistent with a state of mind fully open to the conviction which evidence might produce.
Hopkinson v. State , 679 P.2d 1008, 1031 (Wyo. 1984) (quotation marks omitted). Judicial prejudice involves a prejudgment or the forming of an opinion without sufficient knowledge or examination. Reichert v. State , 2006 WY 62, ¶ 37, 134 P.3d 268, 278 (Wyo. 2006).
DeLoge v. State , 2007 WY 71, ¶ 12, 156 P.3d 1004, 1008 (Wyo. 2007).
[¶41] Aside from Judge Campbell's rulings against her SF104 claims, Ms. Hill's affidavit offers only commentary and characterizations of Judge Campbell's rulings and speculation concerning his feelings about adverse publicity. This is not an offer of evidence that is meaningfully different from simply offering the adverse rulings themselves, and Ms. Hill's affidavit is otherwise devoid of actual evidence of bias. We thus find no abuse of discretion in the district court's denial of Ms. Hill's motion to disqualify.
CONCLUSION
[¶42] We conclude that Ms. Hill's complaint was properly dismissed for failure to state a claim for defamation per se, and that the district court did not abuse its discretion in denying her motion to disqualify the assigned judge. Affirmed.

Mr. Stubson asks this Court to adopt the federal "plausibility" standard for determining whether a complaint states a claim for relief. See Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "). Because our resolution of this matter does not require the adoption of a new Rule 12(b)(6) standard, we need not address that request.

In the years following New York Times v. Sullivan , the Supreme Court extended the actual malice rule to public figures and limited public figures. See Martin , ¶ 9, 101 P.3d at 127. The briefing contains some discussion concerning whether Ms. Hill should be considered a public figure or a limited public figure. Based on the reasoning in our discussion herein, we believe the district court properly directed its decision to Ms. Hill's status as a public official. We therefore need not address the applicability of the public figure/limited public figure distinction.

"[A] motion to dismiss 'is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief.' " Whitham , ¶ 13, 415 P.3d at 1267 (quoting Bush Land Dev. Co ., ¶ 7, 388 P.3d at 539 ). This Court may affirm a district court's Rule 12(b)(6) dismissal "on any legal ground appearing in the record." Guy v. Lampert , 2015 WY 148, ¶ 16, 362 P.3d 331, 336 (Wyo. 2015) (quoting Daniels v. Carpenter , 2003 WY 11, ¶ 30, 62 P.3d 555, 566 (Wyo. 2003) ).

The complaint alleges numerous false statements during Ms. Hill's tenure as superintendent, but any claim for statements made in that period would be barred by the one-year statute of limitations applicable to defamation actions. See Wyo. Stat. Ann. § 1-3-105(a)(v)(A) (LexisNexis 2017). In any event, as the complaint is structured, we do not read it as asserting claims related to those earlier statements.

The complaint neither sets forth a claim for defamation with special damages nor alleges special damages, as would be required by W.R.C.P. 9(g). See Cross v. Berg Lumber Co. , 7 P.3d 922, 932 (Wyo. 2000) (Rule 9(g) requires that special damages be "specially pled with a reasonable degree of particularity, although one need not plead a sum certain"). We also note that in her opposition to Mr. Stubson's motion to dismiss, Ms. Hill specifically highlighted that defamation per se does not require proof of pecuniary loss or harm and emphasized that her claim was one for defamation per se.

This is not at odds with our earlier conclusion that Ms. Hill must be considered a public official for First Amendment purposes. The inquiries for First Amendment purposes and defamation per se each have an entirely different focus. The First Amendment inquiry is focused on the speech and whether the speech is protected speech. The defamation per se inquiry is focused on damages and whether the speech and circumstances were such that damages should be presumed.

Ms. Hill's complaint also stated a claim for injunctive relief. The district court did not specifically address the claim for injunctive relief, but the claim is so sparsely pled that we do not believe the court could have done anything other than dismiss it. The complaint does not allege irreparable harm or the lack of an adequate remedy at law. See CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp. , 2009 WY 113, ¶ 10, 215 P.3d 1054, 1058 (Wyo. 2009) ("Injunctions are issued when the harm is irreparable and no adequate remedy at law exists."). Additionally, the claim is so broad and general in its request for "a permanent injunction barring the Defendant from engaging in defamatory conduct toward Mrs. Hill," that it is difficult to see how such relief would not run afoul of the First Amendment as a prior restraint on protected speech. See Operation Save America v. City of Jackson , 2012 WY 51, ¶ 60, 275 P.3d 438, 457 (Wyo. 2012) (quoting Alexander v. United States , 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993) ) (the term prior restraint is used to describe "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur"). Because the complaint's allegations in support of the claim for injunctive relief are so lacking, we treat that claim as also dismissed and uphold that dismissal. See City of Casper v. Holloway , 2015 WY 93, ¶ 22 n.7, 354 P.3d 65, 71-72 n.7 (treating complaint as one stating only a claim for declaratory relief due to insufficiently pled claim for injunctive relief).